UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHELLE A. BROOKS,<br>    Plaintiff,<br><br>v.<br><br>SBC COMMUNICATIONS, INC.,<br>    Defendant. | :<br>:   CIVIL ACTION NO.<br>:   3:05-cv-1162(JCH)<br>:<br>:<br>:<br>:<br>:   JUNE 22, 2007 |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 43]**

**I.    INTRODUCTION**

The plaintiff, Michella A. Brooks, brought this action against the defendant, AT&T Services, Inc. ("AT&T"),[1] alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. AT&T has filed a Motion for Summary Judgment [Doc. No. 43] seeking to dismiss Brooks's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, AT&T's motion is granted.

**II.    STANDARD OF REVIEW**

In a motion for summary judgment, the burden lies on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); SCS Communications, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . ." Miner v. City of

---

[1] Brooks apparently misidentified the defendant in her Complaint as SBC Communications, Inc.

Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993) (internal quotation marks and citation omitted). When the nonmoving party makes no response to the motion, summary judgement is appropriate so long as the moving party has met its burden. See Fed. R. Civ. P. 56(e); Amaker v Foley, 274 F.3d 677, 681 (2d Cir. 2001).

**III.　FACTS**[2]

Beginning in March 2003, Brooks, an African-American female, was employed by AT&T as a Senior Data Analyst in the Enterprise Software Solutions Division in New Haven, CT. See Def.'s Loc.R.Civ.P. 56(a)1 Statement ("Def.'s Stat.") at ¶ 1. In July 2003, Brooks's new supervisor, James Lutzow, gave her a 2.6 % salary increase, based upon Brooks's satisfactory, but not outstanding, performance record. Id. at ¶ 26.

In August 2003, Brooks applied for disability benefits due to anxiety, depression, and headaches. Id. at ¶ 10. Her disability leave application was approved, effective August 15, 2003, and Brooks remained on disability leave until September 15, 2003. Id. at ¶ 39.

In order to be entitled to receiving disability benefits, AT&T employees must remain totally disabled and unable to work, and they must adhere to certain restrictions placed on their activities, including traveling out-of-state without approval from the company's Medical Absence and Accommodation Resource Team ("SMAART"). Id. at ¶ 13, Ex. 1.

Brooks was notified about the travel restrictions several times, both through a

---

[2] Brooks did not file an opposition or submit a Local Rule 56(a)(2) Statement. Under Local Rule 56(a)(1), the facts set forth in SBC's Local Rule 56(a)(1) Statement are admitted. See D. Conn. Loc. R. Civ. P. 56(a)(1).

2

telephone conversation and through written documentation. See id. at Ex, 3; Barker Aff. at ¶ 5. Brooks testified that, while she does not remember if she received a letter regarding the restrictions, had she received it, she would clearly have been on notice of the travel restrictions. Id. at Brooks Dep. at 168-69. Brooks further admitted that the SMAART Guide, which she saw as an AT&T employee, stated that employees on disability needed prior approval to travel. Id. at 158, 160.

On September 9, 2003, while Brooks was still on disability leave, Lutzow received a forwarded voice mail message, from a man located in North Carolina, that indicated that Brooks had traveled out-of-state to attend a trade show. Id. at ¶ 40. Harry Bermas, AT&T's Asset Protection Area Manager, was subsequently asked to investigate Brooks's apparent violation of company policy, and he discovered that Brooks had traveled to Nashville, TN and Fort Worth, TX, between August 14 and 17, 2003, and September 4 and 7, 2003. Id. at ¶¶ 43-47. A subsequent meeting with Brooks confirmed that she had purchased the tickets with the intention of attending the trade shows, although she denied using them or knowing about the travel restrictions. Id. at ¶¶ 49-50. Based upon Bermas's investigation, which included receiving confirmation from an American Airlines representative that the tickets were used and not transferred to another party, Lutzow decided to terminate Brooks, effective September 26, 2003, for traveling without prior authorization while receiving disability benefits. Id. at ¶¶ 47, 56-57. AT&T has uniformly applied its policy of terminating disabled employees for traveling without authorization, discharging four white employees and one African-American employee for this same reason between 2000 and 2003. Id. at Ex. 9.

## IV.     DISCUSSION

Analyzing whether AT&T subjected Brooks to disparate treatment must be done under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Fitzgerald v. Henderson, 251 F.3d 345, 356 (2d Cir. 2001).  The plaintiff is first required to establish a prima facie case of discrimination.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  A prima facie case for disparate treatment is made out by showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff performed her job adequately; (3) the plaintiff suffered an adverse employment action; and (4) that the adverse employment action occurred under conditions giving rise to an inference of discrimination.  Burdine, 450 U.S. at 254.

Once a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. See id.  Upon the employer's articulation of a nondiscriminatory reason for the employment action, the presumption of discrimination that arises with the establishment of the prima facie case drops out.  See  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993).  The burden then shifts back to the plaintiff to fulfill her ultimate burden of proving that the defendant intentionally discriminated against her in the employment action.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, (2000).  In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for discrimination.  Id.

The court concludes that there is no genuine issue of material fact; the undisputed record demonstrates that Brooks was terminated because she violated

AT&T's uniformly-applied policy that prohibits out-of-state travel without prior authorization for employees on disability leave.[3]

## V. CONCLUSION

For the foregoing reasons, AT&T's Motion for Summary Judgment [Doc. No. 43] is GRANTED. The clerk is hereby directed to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 22nd day of June, 2007.

          /s/ Janet C. Hall
          Janet C. Hall
          United States District Judge

---

[3] To the extent Brooks is claiming that her pay raise was less than she expected because of her race, the court also grants summary judgment in favor of AT&T on this claim.

5